Filed 10/1/24  In re R.H. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| In re R.H., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. K.S., Defendant and Appellant. | E083656 (Super.Ct.No. J283368) OPINION |

APPEAL from the Superior Court of San Bernardino County.  Steven A. Mapes, Judge.  Affirmed.

Pamela Rae Tripp, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, and Dawn M. Martin, Deputy County Counsel, for Plaintiff and Respondent.

1

Defendant and appellant K.S. (mother) appeals the San Bernardino County juvenile court's Welfare and Institutions Code section 366.36[1] order terminating her parental rights as to her child, R.H.  We will affirm.

## BACKGROUND

A detailed account of the procedural and factual history of the section 300 proceedings up to and including adjudging R.H. a dependent of the court is set forth in our opinion issued in mother's prior appeal.  (*In re R.H.* (May 26, 2023, E079932) [nonpub. opn.].)  Suffice to say here that R.H. was three years old in November 2019 when his sibling (baby girl S.) was born with methamphetamine in her system and taken into protective custody at the hospital by respondent San Bernardino County Department of Children and Family Services (the Department).  The Department filed section 300 juvenile dependency petitions on behalf of R.H. and baby girl S.

For the next 31 months, mother and S.H. (father), refused to disclose R.H.'s whereabouts.  In the meantime, baby girl S. had been adjudged a dependent of the court and after unsuccessful efforts to engage the parents in family reunification services the juvenile court issued an order terminating parental rights as to her.

In July 2022, R.H. was found, taken into protective custody, and placed with the G family.  At the September contested hearing on jurisdiction, the juvenile court sustained an amended section 300 petition, including allegations that mother had a substance abuse problem from which she had failed or refused to rehabilitate, and she and

---

[1]     All further statutory references are to the Welfare and Institutions Code.  All references to rules are to California Rules of Court.

2

father have a history of engaging in domestic violence with one another. In October, the court adjudged R.H. a dependent of the court, removed him from parental custody, and continued his placement in the G's home. Family reunification services were bypassed and the court found it would be in R.H.'s best interest to consider termination of parental rights. It ordered weekly two-hour supervised visits for the parents and R.H.

Mother and father timely appealed the juvenile court's findings and orders on jurisdiction and disposition. We affirmed. (*In re R.H.*, *supra*, E079932.)

In the period between the disposition hearing and the resolution of the parents' appeal, the court designated the G family as holders of R.H.'s educational rights and granted their request for de facto parent status. Also during that time, mother and the father traveled to Nevada, where mother gave birth to another child, baby girl A., who was born with a positive toxicology for methamphetamine and amphetamine. Baby girl A. was taken into custody in Nevada and transferred to the Department's care. She was placed with the G family. The court adjudged her a dependent of the juvenile court and family reunification services were bypassed. In September 2023, the court terminated the parents' rights as to baby girl A. and she remained in the G home with R.H.

In September 2023, the court set a section 366.26 hearing to select a permanent plan for R.H. Three days before the contested hearing, mother filed a section 388 petition requesting an order for family reunification services or return of R.H. to her care with family maintenance services. The Department filed arguments in opposition. At the hearing to determine whether to hold an evidentiary hearing, the court found the petition

3

did not reflect substantial change in mother's circumstances and that granting it would not be in R.H.'s best interest.

After denying mother's petition, the court held a contested hearing to select a permanent plan for R.H. Mother testified that she and R.H. shared a really strong bond and asked the court to consider a legal guardianship or other lesser permanent plan. The court found R.H. was generally and specifically adoptable, rejected mother's argument that severing the parent-child bond would cause great harm or detriment to R.H. and ordered termination of parental rights. Mother timely noticed this appeal.

## DISCUSSION

Mother raises two issues on appeal: the juvenile court erred when it denied her section 388 petition and that it erred when it failed to conduct an analysis of the beneficial parent-child exception to termination of parental rights.

1. *The Denial of Mother's Section 388 Petition*

Mother argues it was error to deny her petition because she demonstrated her circumstances had changed and because a juvenile court order granting family reunification services or return of R.H. to her with family maintenance services would be in R.H.'s best interest. In its responsive brief, the Department claims (without a separate heading or subheading as required by rule 8.204(a)(1)(B)), that the denial of mother's section 388 petition is not cognizable on appeal because that issue was not included in her notice of appeal. We agree with the Department.

Our jurisdiction to review a timely appeal of an appealable order is limited to the judgment or order described in the notice of appeal or its legal equivalent. (*In re J.F.*

4

(2019) 39 Cal.App.5th 70, 75 (*J.F.*).) In relevant part, rule 8.405(a)(2) requires notices of appeal in a juvenile dependency proceeding to be liberally construed, and provides a notice is sufficient if it identifies a particular judgment or order being appealed. That rule is intended for use in cases of ambiguity and cannot be applied where there is a clear intention to appeal from one of two separately appealable judgments or orders. (*J.F.*, *supra*, at p. 76.) In other words, the policy of liberal construction does not apply if the notice of appeal is so specific it cannot be read as reaching a judgment or order not mentioned in the notice. (*Id.*, at pp. 78-79.)

Here, page one of mother's form notice of appeal, signed by trial counsel, states her appeal is from the findings and orders of the court, described as: "4/4/24 [¶] Termination of Parental Rights."

Item 7 on the page two requires the person preparing the form to "check all [the boxes] that apply." The only item 7 boxes checked in mother's notice are in item 7c., which show she is appealing an April 4, 2024, section 366.26 order terminating parental rights. Left blank are the item 7 options designed to permit the preparer to list "[o]ther appealable orders relating to dependency" or simply "other" (items 7e. and 7h.). There is no mention of the section 388 petition anywhere in the notice.

In view of the notice's specification that the appeal is from "Termination of Parental Rights" on April 4, 2024, and the complete absence of any mention of the denial of the section 388 petition, we find the notice presents a clear and unmistakable intent to appeal only the order terminating parental rights. (*J.F.*, *supra*, 39 Cal.5th at pp. 78-79.) Accordingly, we lack jurisdiction to review the order on mother's petition. (*Id.*, at p. 79.)

We note that, even if we had jurisdiction to consider the denial of the petition, mother would not prevail. Subdivision (a)(1) of section 388 provides in relevant part that a parent of a child who is a dependent of the juvenile court may, upon grounds of changed circumstances, petition the court to change, modify or set aside a prior order of the court if to do so would be in the child's best interests. Even if we were to assume her averment in the petition of successfully maintained employment and housing signaled that she had severed her relationship with the father, her evidence of recent sobriety reflects changing, not changed circumstances.

Parents with a longstanding substance abuse problem severe enough to cause them to be unable to provide adequate care for a child cannot show changed circumstances within the meaning of section 388 by a showing of recent sobriety and participation in a treatment program. (*In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223.) Demonstration of an extended period of sobriety is crucial to establish changed circumstances in cases of parents who have not been able to remain substance free even when pregnant or when faced with the loss of their children.

Here, the record amply demonstrates that mother's drug issues are longstanding and entrenched, and that she did not stop using when pregnant or even after having her parental rights terminated. In November 2019, R.H. came to the Department's attention because mother and baby girl S. tested positive for methamphetamine. Reunification efforts as to baby girl S. were not successful, and parental rights were terminated. Three years later, in November 2022, after parental rights had been terminated as to baby girl S.

6

and reunification services had been bypassed in R.H.'s case, mother and baby girl A. tested positive for methamphetamine and amphetamine when baby girl A was born.

It appears from documents attached to mother's petition that she made an attempt to address her drug abuse problem between October 2022 and April 2023, including a laboratory result showing a February 2023 negative test. She also attached a typed list of unknown origin stating she had tested negative several times between October 2022 and February 2023, but did not mention she had tested positive for methamphetamine and amphetamine in November 2022 when baby girl A. was born. While we commend mother for her efforts to address the circumstances leading to R.H. being removed from parental care, her petition at best suggests her circumstances were changing, not that they had changed.

2. *The Parent-Child Exception to Termination of Parental Rights*

Mother argues reversal of the order terminating parental rights is called for because she had met her burden of proof to satisfy the requirements of the beneficial parental relationship exception, but the juvenile court failed to conduct a proper analysis of facts relating to the exception. We are not persuaded.

Where, as here, family reunification efforts have failed and the court has found the child is likely to be adopted, the juvenile court is required to terminate parental rights unless the child comes within one of the exceptions to termination set forth in subdivision (c) of section 366.26. (*In re Caden C.* (2021) 11 Cal.5th 614, 630-631 (*Caden C.*).)

One of those exceptions permits the selection of a permanent plan other than adoption if the parent has established three elements by a preponderance of evidence:

(i) the parent maintained regular visitation and contact with the child; (ii) the child has, and would benefit from continuing, a substantial, positive, emotional attachment to the parent; and (iii) the detriment the child would suffer if the relationship with the parent was terminated outweighs the benefits afforded the child by having an adoptive home. (§ 366.26, subd. (c)(1)(B)(i); *Caden C.*, *supra*, 11 Cal.5th at pp. 636-637.)

Here, the court found mother had established the first two elements (visits and a beneficial, positive relationship) but had not shown the level of detriment to R.H. needed to satisfy the third element. A juvenile court's ruling on the third element is reviewed for abuse of discretion and the decision will not be disturbed absent a determination that the decision exceeded the bounds of reason. (*Caden C.*, *supra*, 11 Cal.5th at p. 641; *In re I.E.* (2023) 91 Cal.App.5th 683, 691 (*I.E.*).) A court abuses its discretion when it makes an arbitrary, capricious, or patently absurd determination. (*Caden C.*, at p. 641.) The reviewing court views the evidence in the light most favorable to the trial court's decision, giving the prevailing party the benefit of every reasonable inference and resolving all conflicts in support of the order. (*I.E.*, *supra*, at p. 691.)

R.H. was three years old when the dependency proceedings were initiated in December 2019 and was not taken into custody until the family was located 31 months later in July 2022. It is unknown whether he remained with his mother for all of that time, but there is no doubt a bond between them was evident during the visits that took place between July 2022 and the April 2024 section 366.26 hearing. R.H. was sad about not being reunified with his mother, and had been working with a therapist to address his feelings of grief and loss.

There is no evidence that severing R.H.'s bond with mother would cause him great emotional harm. Although mother testified there were "instances where [R.H.] will cry" when visits were ending and R.H. said he wanted to return to her care, there is no mention in the record of R.H. ever asking about her or requesting to contact her in the periods between visits. Nor did R.H. exhibit any emotional or behavioral problems at school or in the G home, and he was excelling socially and academically. There is no suggestion that the therapist had any concerns about terminating R.H.'s relationship with mother.

On the other hand, the record establishes that adoption would significantly benefit R.H. He had settled in with the G family since his arrival in July 2022 and was securely attached to them. He would not only be raised with his youngest sibling, baby girl A., who was a part of the G family, but also with a boy in the home whom R.H. considered a brother and who was the same age as R.H. R.H. said he felt safe and loved in the G's home, and liked being in a family. He understood the concept of adoption and, though he said he will be sad not to see his mother, he wanted to live with the G's.

In the circumstances presented, we cannot conclude that the juvenile court's decision not to apply the parent-child relationship exception to termination of mother's parental rights exceeded the bounds of reason. (*Caden C.*, *supra*, 11 Cal.5th at p. 641; *I.E.*, *supra*, 91 Cal.App.5th at p. 692.) R.H.'s enjoyment of visits and expressions of sadness about not living with mother do not compel a conclusion that the benefit of continuing his relationship with her and the harm caused by severing it outweigh the

9

benefits he would derive from the security and stability of an adoptive home. (*Caden C.*, at pp. 633-634; *In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.)

Mother argues reversal of the order terminating her parental rights is called for because the court was required to, but did not, perform an in-depth analysis of the detriment-benefit element of the parental relationship exception to termination. In support of her claim, she cites *In re Dy.P.* (2022) 76 Cal.App.5th 153 (*Dy.P.*).

*Dy.P.* involved a permanent plan selection hearing that took place before the Supreme Court issued its opinion in *Caden C.* (*Dy.P.*, *supra*, 76 Cal.App.5th at p. 164.) In that case, the mother testified about the quality of the parents' relationship with their children and the detrimental impact termination of parental rights would have on them. (*Id.*, at pp. 161-162.) At the conclusion of the hearing, the juvenile court said the burden was on the parents to show applicability of "'one of the exceptions,'" that it "'really [did not] have enough evidence to that fact,'" and proceeded to terminate parental rights. (*Id.*, at pp. 162-163.)

The appellate court reversed. (*Dy.P.*, *supra*, 76 Cal.App.5th at p. 170.) It found the mother's testimony provided some evidentiary support for each element of the beneficial parental relationship exception. (*Id.*, at pp. 166-167.) It was, therefore, an abuse of discretion under *Caden C.* to rule the evidence was inadequate to support *any* exception rather than analyzing it in the context of the elements of the parent-child beneficial relationship exception. (*Dy.P.*, at pp. 166-167.)

Mother posits her case presents the very same situation as that found in *Dy.P.* because the court did not properly conduct an in-depth analysis of the detriment issue and

because it failed to mention the "contrary evidence" supporting the conclusion that termination of parental rights would be more detrimental to the child than not being in an adoptive home. She is mistaken.

Here, the court specifically considered and ruled on mother's argument that the beneficial parental relationship applied. It found she had established the first two elements (visits and a bond) but not the third element (the detriment/benefit calculation). Although the court is required by section 366.26, subdivision(c)(1)(D) to state its reasons in writing or on the record when it finds termination of parental rights would be detrimental to a child, it is not required to do so when it concludes termination would not be detrimental. (*In re A.L.* (2022) 73 Cal.App.5th 1131, 1156.)

## DISPOSITION

The order terminating parental rights is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ _____
                                                              P. J.


We concur:

McKINSTER _____
                          J.
FIELDS _____
                          J.

11